Good morning and welcome to the Ninth Circuit. All four cases will be argued this morning. We have read your briefs. We look forward to your argument. The first case is Perez v. Nielsen. When you're ready, counsel. Good morning. May it please the Court. Henry Cruz for the appellant. Good morning. Mr. Perez. The sole issue... I will reserve five minutes for rebuttal. Okay. The sole issue before this Court is whether the District Court has subject matter jurisdiction over Mr. Perez's complaint under the APA challenging the agency's denial of his U-Visa petition. Now, the District Court ruled that judicial review is precluded under 5 U.S.C. 701A2. Can you point to any cases where the Court has found that has subject matter jurisdiction over denial of U-Visas? No, Your Honor. There is no published decisions holding that. Is it a published decision? Are you going either way? No. There's no published decision rejecting jurisdiction as well. So we get to decide as a first impression. We get to rule the matter as a first impression, I guess. Okay. So the District Court... So the 701A2 basically reads that it applies to agency action committed to agency discretion by law, which basically means that there are no judicially manageable standards by which a court may review the agency's decision. But now the courts have made clear that Section 701A2 applies only to those rare instances where the statutes are drawn in such broad terms that there is simply no law to apply. Well, I'm going to tell you as a backdrop that I have concerns in terms of since the program, I guess, has been in effect for quite some time. And Congress also said you can't issue more than $10,000 a year, right? Correct. That's it. It stops at $10,000, and a person could have the best story ever after $10,000, and they're out. And it looks like USCIS has received more than 30,000 U-1 visa petitions in each 2016 and 2017, and at the end of 2018, they have more than 134,000 pending. And so basically I'm looking at reviewing 134,000 cases or that, and it's never happened before. If it's really not a completely discretionary act, how can they cut it off at $10,000? And we would have to, my understanding of how this works, it would be we would have to, in the case of your client, I guess, he made loans of $50,000, and they can't track down the people that are allegedly extorting from him or that they won't pay him back or they're harassing him as far as that goes. How could we ever ascertain without having full hearings on everything whether it should have been issued or not? Well, Your Honor, there are a few points to make. First, Your Honor mentioned that the action is completely discretionary, but I don't think that really matters in terms of a court's capacity to review the decision. Well, except for with prosecutors deciding, does this really help us? Is this the kind of crime that we want to give a U visa to? It's not, you know, we're not talking about asylum or we're not talking about things that happen pursuant to other hearings that go on. I mean, first, you know, I mean, prosecutors can decide whether someone helps them or not. How do I know whether they would help them or not? Because I don't know what they're doing. Well, first of all, we're not asking the court to review any prosecutor's decision whether or not to prosecute the crime. In fact, under the U visa statute, prosecution is not required. The minimal is that a crime has been detected by a law enforcement agency. In terms of how a court could make a decision on that, again, we're not asking that the court reexamine all the facts and weigh the facts as they are in the court's capacity to review the agency's decision for factual findings. This court has made clear under ASSE International that they review for substantial evidence. So just like any other case where a court is reviewing the factual findings, it would be under that standard, which this court, of course, is clearly capable of doing. So I don't think that we're asking the court to make another trial of the case because that's simply not what we're asking. But if I don't know, then how can you cut it off at $10,000? Because $10,001 could be the most meritorious case ever, in our view, to exercise our discretion on. But there's no doubt that they can cut it off at $10,000. Well, we're not asking the court to go beyond the statutory limit as well. I mean, these individuals have to wait right now at least four years for a decision to be made in this case, which is what Mr. Perez had to wait after he waited and got the decision. That's when we challenge the decision of the agency. So we're not asking. If the question is how can there be a review for abuse of discretion if there's an upper limit and the requests are far in excess of the upper limit, it may well be that it's unfair to have the upper limit. But if the upper limit is a hard limit, well, that's a reason and a justification, and that's the end of it on that question. Okay, sorry, you're won over and you don't get it. For applicant $10,001. Yeah, I mean, that's reviewable. And if he truly is or she truly is applicant $10,001, okay, the answer is no. I'm sorry, that is the answer. That's the right answer. Yes. And so I think what the court, when they're looking at whether there's jurisdiction under Section 701A2, they're looking at the overall structure of the statute here to find where there's any standard that they can actually apply to review the agency's decision. And, you know, our contention is that there's plenty of law to go around under the U visa statute and the implementing regulations. I mean, the U visa statute provides, specifies the eligibility requirements of what a person needs to demonstrate to receive a U visa. It also provides evidentiary standards. So could you back up? It provides the standards. You have to have been a victim of a crime, reported the crime, been helpful in prosecuting it. Yes. You have to be the victim of a crime that was investigated or prosecuted by authorities, and that criminal activity must involve or be similar to one of the enumerated offenses under the statute. Right. So let's talk about that a little bit because here it was found that this wasn't, or that's the argument, that it wasn't. And so you have to show us that that would be something we could review, the decision that it's not really comparable. We, of course, immediately think about the modified categorical approach, and away we go off to the races. But we do those kinds of statutory comparisons. Yes. You haven't really come out and said that's what you think you will. How would you help us make that analysis here? Well, so if we're talking about whether the criminal activity is similar to one of the enumerated offenses. Right. How would we review that? I haven't asked my question very clearly, but that's what I would like you to answer. Yes. So the regulation defines that as a comparison of the elements of the two offenses. Right. The nature and the elements. So you would look to, as the courts do in determining the elements of crimes, you look to state law, the statute, and state law in determining what those elements are. Right. And that's why I say I don't want to take a lot of your time, but that's why it strikes me, it sounds a whole lot like the categorical approach. Is that what you're suggesting we would do? Well, the categorical approach, no, because the statute doesn't require them to be a categorical match. I guess that's my answer to that. But you would do an element by element comparison. But, yes, you would still compare the elements, yes, just like you would do in a categorical approach or a modified categorical approach analysis. Here's a practical question. As Judge Callahan indicated, and as you know well, there are an awful lot of these applications. And if it becomes the law of the circuit that a denial of an application for a U visa is judicially reviewable, I'm not sure I want to answer the phone call from the district judge who says, you just increased my caseload by a considerable amount. I mean, this would be a change in the practical reality of what goes on in the district court. Yes, Your Honor. I guess I just have two responses to that. The first is I'm not aware of any practicality considerations when courts reviewing whether there is a matter of jurisdiction. Well, it's a question of caseload. This is not a question of going to standards.  I don't have the numbers, Your Honor, but I know that I don't hold me on this, but in my experience, you know, I worked several years in these cases. Most of the cases are granted. So, you know, when we're talking about the numbers that can be granted a year, obviously those cases aren't going to be reviewed because we wouldn't be receiving a review of a granted case. So, again, I don't have the numbers, but in terms of the court looking at just the number. Well, they can't be mostly granted because I told you the number of people that are applying, I pulled some numbers of how many applications that they're having, and they can't have more than 10,000 a year, and I think right now they've got like 194,000 pending or something like that. Well, that's just going to the backlog. That doesn't mean that the rest of those cases beyond the 10,000 are going to be rejected. In 2016, there were 30,000. In 2017, 30,000. And there's 134,000 pending. Yes, those are the cases pending. So they haven't been decided on. No, but in 2016, 30,000. So if we're figuring that that's how many are being filed yearly, they can't all be granted. Because it says you can't grant more than 10. Well, I didn't say that they're all being granted. And, again, just because they can only grant 10,000 a year doesn't mean that those others can't be granted later. There's a backlog. So, you know, those people who are in line right now aren't necessarily having their cases rejected. They're waiting to have a decision. Can I ask you the opposite question? Because I have the opposite reaction that Judge Fletcher has. It seems to me that these wouldn't take much to review at all. Because you have to get a certification from the police that you've been helpful and that there's evidence of a crime. When they find no probable cause to think there's a crime or that you haven't been, quote, unquote, helpful, what is there to review? If that's in a hypothetical case, if that's what comes back, is that why is that? I'm not sure that's not summarily affirmed. So the thing is we're not asking to review the certification or the law enforcement agency's decision to sign or not sign the certification. Because you would lose here. Correct. We don't. I think this would be a very tough fight for you on the merits. We're just talking about jurisdiction today. But the question was, well, referring back to Judge Fletcher's not wanting to take the phone call from the district court. I don't know that this is a lot of extra work because the numbers seem to be large. I agree with Judge Calhoun. But they also strike me as applications that may be summarily denied and affirmed. Right. And the court would be reviewing whatever's already in the record. We wouldn't be submitting any new evidence in terms of, oh, well, wait, there's more evidence that this crime occurred instead of this other crime. The court would be limited to the administrative record in reviewing these cases, which is what was the case in this case. So how would a hypothetical applicant get around a certification from a police department or the law enforcement agency that said, no, there wasn't a crime or this person didn't help prosecute a crime? Would that be the end of the game? They wouldn't. Yes. No. Again, we're not making that challenge, but in my review of the case law, they wouldn't be able to challenge the decision to not issue a certification. So this is not in the record, and so this is going to be an estimate from you. How many people apply for U visas when they don't have the certification? Zero. Yeah. The statute requires a certification. Yes. Certification or certification that is a thumbs up? Well, the certification says that this person was the victim of a crime and that they were helpful in the investigation of that crime, and then it provides what crime that is. Well, I don't mean to be splitting hairs, but there's this form that has to be filled out, right? Correct. And that's what I'm thinking of that as the certification. Yes. And that has to be filled out. Yes. So it may be certification of, yes, there was a crime and, yes, you were helpful, and then there's the application. But that same form might say there's neither of those things. And then I think you just said that would be a nonstarter. Is that right? Correct. Well, they only sign the certification if they agree that a crime that you put down in that form was committed and that they investigated that crime. So what do we call this? Isn't it assigned here? Yes. Isn't the certification signed here? Yes. But it's signed sort of in the – Well, so the issue – one of the issues in this case was they certified that Mr. Perez was the victim of harassment, but they didn't specify whether it was felony harassment or simple harassment. But when they said there's no probable cause that a crime occurred here. Well, that's another issue because they said that in the second certification, and one of our contentions is that the agency couldn't even review that second certification because they put in a footnote that it wasn't submitted pursuant to the rules for initial evidence. And so if they're saying they can't consider it as evidence, I don't know how they can consider it for their decision. We're talking about the form I-918, right? Yes. So there were two submitted. So that language comes from the second one. Thank you. My guess is you'd like to reserve the rest of my time for – yes, for rebuttal. Thank you. Thank you. May it please the Court. My name is Francesca Genova with the Department of Justice, and I represent the USCIS appellees in this matter. This Court should affirm the dismissal of this case under 5 U.S.C. 7182 because the determinations of both how to weigh the evidence and how to compare qualifying criminal activity lack any judicially manageable standards for review in this case. Have you done environmental cases under NEPA? No, Your Honor. Because it immediately occurs to me if there are no judicially manageable standards here, I think NEPA goes out the window in terms of judicially manageable standards in environmental cases for reviewing the adequacy of an environmental impact statement. But if you've never done any litigation under NEPA, I guess you can't answer the question. I apologize, Your Honor. I have not. So I will address the factual question first. So under 5 U.S.C. 7182, as this Court knows, there's no judicial review where the agency action is foreclosed or is committed to agency discretion by law. In Heckler v. Cheney, that was clarified as that a court would have no meaningful standard against which to judge the agency action. In this case, that is the case. The statutes do not provide any meaningful standard about how to weigh the evidence in this case. Is it your position that we don't look at the associated regulatory scheme? You just said statutes, and I just want to be sure I'm understanding your position. Yes, the Court does look at the associated regulatory scheme as well. However, the first step is looking at what Congress has authorized by statute and then looking at the regulations. The regulations in this case also commit to agency discretion, how to weigh the evidence. It has to consider all the evidence. And you know, of course, you've read the brief, so you know what the argument is, that the statute has the agency has to consider whether or not he's reported being a victim of a crime, whether he's helpful in prosecuting the crime, whether it's an enumerated crime, and so forth. So why is that not adequate? So the question in this case is not whether or not USCIS has a mandatory duty to consider those requirements. No, I appreciate that, but my question is, why aren't those standards that one would tick off almost like elements? Why is that not judicially reviewable, please? So the individual standards, whether or not USCIS has considered those standards, would be reviewable in a case where it seemed apparent that USCIS did not consider, for example, a certification or failed to consider one of those enumerated standards. The issue here is more narrow than that. It's whether or not it's judicially reviewable to determine the weight of evidence based on USCIS's review of those four elements. Well, Mr. Perez alleges that USCIS failed to consider all the evidence that he presented. Setting aside for argument how that evidence should be weighed, do you agree that this Court can determine whether USCIS at least considered the evidence presented? Yes, this Court could consider whether USCIS did consider the evidence under its statutory duty under 8 U.S.C. 1184-P4. What the issue in this case is to the weight, and in the administrative record here, it is apparent that USCIS did indeed consider the whole record. On the excerpts of record page 19, the administrative appeals office stated that it considered the record as a whole in determining that a crime was not detected. And in excerpts of record 20, it stated that after a careful review of the record, it determined that the certification did not show that this crime was detected. So in this case, USCIS did indeed consider the whole record in its determination. Are you familiar with 1252? Yes. Okay, so under the Immigration and Nationality Act, Section 1252 bars judicial review of certain decisions, including U visas under Section 1184. Should 1252 apply in this case? I'm not aware of the specific provision governing U visas in 1252, Your Honor. Okay. I can brief that supplemental if you would wish to. Well, that's not going to help me write this second. Okay. I'm sympathetic with your argument in the abstract, that is to say, if there really are insufficient standards for us to review, then judicial review is precluded. Are you familiar with the Achimian case for sua sponte reopening motions in front of the BIA? Yes, Your Honor. I mean, in that case. I like that better than NEPA. Yeah. In that case, in fact, I wrote the opinion for the panel. The standard for whether or not the BIA would sua sponte reopen was were there extraordinary circumstances. And we held, over at dissent, but we held extraordinary circumstances that really isn't sufficient standard. But extraordinary circumstances is pretty vague. And here we've got some fairly precise requirements that require some judgment. I get that. But that's a long way away from Achimian. Your Honor, I would contend that it's not a long way from Achimian, because the specific judicially unreviewable portion of both the facts and the law in this issue are themselves more open-ended language. So in the regulations, it states that the USCIS will determine the evidentiary value, and there's no definition as to what the evidentiary value is for determinations of the certification. USCIS makes clear in the preamble to the regulations that the touchstone is the law enforcement certification, but it still reserves to itself the ability to consider its own evidence and make the ultimate consideration about that certification. That's on 72 Federal Register 53024. And additionally, in terms of the judicially manageable standards for qualifying crime, as Your Honors were discussing previously, there are different approaches that courts do and can take in determining whether crimes are substantially similar. However, that's nothing that is apparently part of what Congress had intended in this case. It did not specify which type of decision-making or which type of categorical, modified categorical or any type of approach that should be specified in this case. So because there's no judicially manageable standards about both how to weigh the evidence of the certification and the information provided with the certification and how to determine how to compare the elements of the crime, both of those determinations are like ecumene where there are no judicially manageable statutes, regulations. But how would we ever determine whether someone, whether it was helpful or how would we ever, in this case, what I guess this particular, what's his immigration status at this point? There was no record of his immigration status in our information. He seems to have not come in contact with the immigration system. Well, but he, so does, I mean, is he, does he, he obviously, if he's applying for a U visa, he can't have legal status, right? Presumably not. So, and he's claiming that he lent $50,000 to some people and that he can't get it back, is that right? To my understanding, yes. Okay. And, I mean, how would we ever, it sounds like in this case that they're, they didn't even really necessarily believe he was a victim of a crime. I mean, there was a little bit of question about that. I mean, how would we, how would we review something like that? Yes, Your Honor, that's why there is no manageable standards for this court to review. USCIS has the expertise in determining how to evaluate the certification and the helpfulness standard in light of the U visa regulations that put as a touchstone the helpfulness to the law enforcement agency. In this case, USCIS in the regulations made clear that that's something that it has expertise over and it has provided that all those decisions are handled from the same servicing center so that expertise would be developed among the same people processing these applications. Well, a U visa doesn't give you legal status necessarily. Does it just stay deportation or what's the, how does that work? It provides certain authorizations that to my understanding, although I do not remember off the top of my head, I believe it's in the briefing, do ultimately lead to being able to receive legal permanent residency status. However, I'm not entirely sure I'm remembering that correctly so I can brief, you know, brief that as well. Do you do immigration cases regularly or what type of cases do you do? Yes, I do immigration cases. Our office does not handle the Board of Immigration Appeals type cases. We handle more federal courts litigation and district court about programmatic challenges and the like. Okay. But you don't really know what, if someone gets a U visa, what the effect of that is on their immigration status? My understanding is that it allows them to be in this country and have status and employment authorization and then that can lead to... But it doesn't give them, they don't become LPRs by getting a U visa. No, they do not. It needs to be, I think, renewed every four years. However, I can point you to, those statutes are cited in the addendum to the brief in this case. So in this case, importantly, it is the rare position in which you're dealing with a third-party certification and a third-party determination and having USCIS review that third-party certification. So because there is that third-party certification, it's a different type of standard than other cases where the court has reviewed agency determinations based on a set of more easily discernible facts. So, for instance, in Spencer Enterprises, that case involved basically two touchstones that the attorney general needed to determine, one of which involved employment and one of which involved monetary investment in the United States, both of which are more objective assessments than the assessment as to whether or not a certification shows helpfulness in the... in the statute in Spencer? I mean, here there's nothing that requires the government to issue U visas, right? Yes, you are correct. There was a shell there of a statutory requirement that one would be issued. Additionally, recently in Hyatt v. Office of Budget and Management, this court considered a case involving another shell statute. It talked about how the director shall take appropriate remedial action if necessary. In that case, the court... Okay, let's go back to Spencer. My understanding of Spencer is the court found that the INS's decision to deny the applicant's visa was not left solely to the USCIS's discretion. Am I wrong or am I right on that? Excuse me, can you repeat the question? I apologize. Well, in Spencer, I think the court found that INS's decision to deny the applicant's visa was not left solely to the discretion of USCIS's discretion. It wasn't left solely to USCIS. In the U visa, it's solely up to USCIS, isn't it? Yes. I mean, isn't that a difference between... Yes, Your Honor. I mean, if Spencer applies here, you're doomed, right? You need to be able to distinguish Spencer. I believe that Spencer is indeed distinguishable because it involves a shell and involves something that's... That's what I was asking you. Yes. And that's not what you're not telling me why it's distinguishable. Tell me why it's distinguishable. It is distinguishable because it does involve a shell mandatory requirement. And as I stated, it involves two requirements that are something that a court could their subjective or objective determinations about, you know, whether you are indeed able to invest a certain amount of money into the United States and whether you will indeed employ the number of qualifying Americans. So this court concluded that by mandating the agency to issue visas, Congress did not leave the decision to the discretion of the agency, right? Yes. Okay. And here, with U visas, the discretion is left to the agency. Yes. But the ruling you're asking us to make goes way beyond immigration. This would be new law for construing the APA. So I'm very concerned about that, our very fundamental jurisdictional structure here. You were going to talk about Hyatt just a minute ago. And actually, I was on that case, and I found no jurisdiction there. I think it's a statute that basically said the agency should take action as appropriate. No standard at all. I actually would have thought the opposing counsel would have filed this case in a 28-J letter. I appreciate your candor, but how does this help you? How does Hyatt help you? Because in that case, the court found that there was no judicially manageable standard for the appropriate, if necessary, decision. Right, I know. I was on the case. But my problem is there it's as appropriate. What does that mean? If you juxtapose that, this would truly be helpful to me because you know what my position was on that case. And that standard, which seems to me to be nonexistent, juxtaposed against this one, I'm not sure that helps the government's position at all. And given that I've told you that I'm really concerned about what we're going to be doing with the APA because this isn't just about immigration, could you please focus on Hyatt and tell me how that helps you? Yes. So there are two points. First, I'm unsure of what Your Honor's concern is with the APA in general because this is just applying the same exception to a very narrow circumstance of this determination of weight. Well, that's your position, but okay. And then for Hyatt, it's the same type of case where it's about whether or not, if necessary, as you mentioned, that language is broad and provides discretion. In this case, there is not even – that was still a statutory language. In this case, there's no statutory language that even applies to this determination. That's why I asked you right at the outset whether you're considering the regulatory scheme or limiting yourself to the statutory scheme. And I think you said you look – it's all in. We look to see whether there's a standard all in that we could review. Your Honor, I'm out of time. May I finish the question? Oh, please. So, yes. So then the regulation that applies in this case states that it is in USCIS's sole discretion how to weigh the evidence. So you have that same type of vagueness about what – or not vagueness, but openness for USCIS to make its own interpretation about how to weigh the evidence and in its sole discretion. Well, sole discretion vis-a-vis other agencies. I'm not sure that means sole discretion vis-a-vis the judiciary. Excuse me, Your Honor. I didn't understand the question. Well, sometimes sole discretion is designed to exclude certain entities but not others. And it may be that that language means sole discretion vis-a-vis other agency determinations but does not mean sole discretion vis-a-vis the judiciary. In this case, USCIS reserved it to its sole discretion under its own promulgation of the regulations. Yeah, I understand, but that doesn't quite take my point. In terms of whether the understanding of sole discretion in this case? I'm out of time. That's all right. My question might not have been clear enough, but that's all right. I apologize, Your Honor. May I conclude? Please. Thank you. For the foregoing reasons, this Court should affirm the district court's dismissal for lack of jurisdiction. Okay. Thank you. Thank you very much. And you have reserved some time. Thank you. One point I'd really like to stress is that for jurisdiction under the APA, it does not require that the statute mandate nondiscretionary decisions. The APA itself assumes reviewing discretionary decisions for abuse of discretion. It's there in the statute. But if sole discretion means excluding the judiciary, that's different from discretion. Sole discretion means something else. The language from that is from the regulation, agency granting itself sole discretion to review the weight of the evidence. Now, a couple points on that. First, I think that this case cannot be distinguished from ASSE International. That case dealt with another immigration issue, looking at solely regulations, where the agency gave to itself discretion to review and even sole discretion on certain issues. But the court itself said that that doesn't mean that they still can't review those factual findings for substantial evidence. Even in the case here, where the agency reserved itself sole discretion to the weight of the evidence, the court can still look to see if the agency took appropriate steps to reach those decisions under the substantial evidence standard. Now, the other ‑‑ What's your client's status? I'm sorry? What's your client's status? He has no status. Okay. So he would have to get this to be able to stay? He would have to obtain a U visa to have status, yes. The other point is that our arguments, our claims, Mr. Perez's claims, aren't simply relying on the weight of the evidence. Most of the claims, in fact, have to deal with violations of the statute, the mandate that they consider any credible evidence relevant to the petition, the regulations that deal with how they can consider any evidence submitted to determine whether there's been a qualifying crime. Now, if we agree with your position that, in fact, judicial review is available, is that going to require a change of the form or a more elaborate explanation so that we get something that's more readily reviewable? Because I'm looking at these forms. It's mostly check the box and some fairly small boxes in which to write things. If I'm truly setting it up so that a district judge is supposed to review for abuse of discretion, I'm inclined to think that the decision maker is going to have to put some more explanation down. Is that right? Well, Your Honor, I don't know if the form itself needs to be amended. I mean, the form basically is just part of the issue of whether the individual was a victim of a crime and cooperated in that crime. I don't see how your client can win here. You're saying you're not asking us to go back and look at everything, but I don't see how your client can win here without, first off, they said this wasn't a crime that they considered, it didn't meet the criteria, and so we would have to go back in and do something like the categorical approach to decide that and then say that this harassment should be something that they consider. Then we would have to go back in, and my understanding is they couldn't locate either of these two people that are allegedly harassing, that we would have to believe your client. You know, first we'd have to determine this harassment crime satisfied. Then we would have to believe that, would have to believe your client that it occurred. And I don't see how your client could ever win without just redoing the whole hearing, even though you say that's not what you're asking us to do. Yes, Your Honor. So the issue is whether the evidence that was submitted to the agency supports its decision. But you are asking us to look at the sufficiency of the evidence. Yes, Your Honor. And the helpfulness of it, and whether your client's believable. Well, there was no credibility determinations, so credibility isn't an issue in this case. And, in fact, the agency made no clear. I think the credibility is absolutely baked in in this case, and that's one of my big problems, because there's an indication here. He said that he was extorted. I'm summarizing, right, that he received these threats, and then the response back from the police is we couldn't find these threateners, and there's no probable cause to determine a crime occurred. So it seems to me the police responded with what I interpret as they didn't believe your client. So how is there not a credibility determination? Well, Your Honor, because, again, I think Your Honor is referring to the second certification, the language about no probable cause, but that's not the certification that the agency ruled on. It was the first certification. Well, okay, just go to a hypothetical, and back to Mr. Callahan's point. Let's pretend that's on the first certification. How would that work? Well, then I would say, because the certification says two things. They actually sign it saying that this person was the victim of this crime, and in this case they put down harassment in the harassment statute. Now, at the same time they're saying there was no probable cause to believe that a crime occurred, well, that's a contradiction in itself, and so perhaps the agency is able to rule on the weight of that evidence because, again, it has to determine it's not tied simply to the certification. It can consider all evidence in the record to make its separate determinations. So, you know, if we were just relying on something like that, well, I think that would be problematic for the certification alone in itself. But in our case, the certification we were relying on, it did not have that language. Thank you. Thank you, Your Honor. Okay. Thank both sides for their arguments. Thank you. Perez v. Nielsen submitted for decision.
judges: W. Fletcher, Callahan, Christen